**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**

MARGARET MALATERRE,

on behalf of herself and all others similarly situated,

Plaintiff,

v.

NATIONAL BATH SYSTEMS LLC,

Defendant.

**Case No.: 2:25-cv-00543-cr**

**PLAINTIFF'S UNOPPOSED MOTION TO DIRECT CLASS NOTICE AND GRANT PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff Margaret Malaterre ("Plaintiff") respectfully moves for preliminary approval of the Settlement and for certification of the Settlement Class.[1]

## I. INTRODUCTION

Defendant National Bath Systems LLC ("Defendant" OR "Bath Fitter") provides bathroom remodels in the USA under the Bath Fitter® brand. S.A. ¶ I.1. Plaintiff brought this class action against Defendant for its failure to properly secure and safeguard the personal identifiable information ("PII") of its current and former employees.[2]

Specifically, this litigation arises from two cyber security incidents involving Bath Fitter (collectively, the "Security Incidents"). The first security incident occurred approximately between December 4, 2024 and December 5, 2024 (the "December 2024 Security Incident"). Through impersonation of a Bath Fitter IT support technician, a threat actor gained access to Bath Fitter's network and deployed ransomware which encrypted Bath Fitter's files and potentially accessed

[1] Unless otherwise noted, all capitalized terms are defined in the Settlement Agreement ("S.A."), which is attached hereto as Exhibit A.
[2] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

data. Since personnel files may have been affected, it is possible that the Security Incident affected passport numbers, driver's licenses, social security numbers (in the United States) and social insurance numbers (in Canada), birth dates, financial account numbers without any associated personal identification numbers (PINs) or passwords, health and safety related information, direct pay authorizations, compensation-related information as well as onboarding information such as applications, resumés, and background checks. If the personnel file contained information about disciplinary action, it may have been potentially breached as well. Bath Fitter provided an interim notice of the Security Incident to potentially impacted current and former employees on December 26, 2024. Bath Fitter concluded its full investigation and provided final written notice of the December 2024 Security Incident on or about April 23, 2025. Bath Fitter implemented a number of additional cyber security best practices following the December 2024 Security Incident. *Id.* ¶ I.2.

Another security incident occurred on May 13, 2026 (the "May 2026 Security Incident"). A different threat actor gained access to Bath Fitter's network and potentially accessed a subset of the same personnel files and data elements that may have been accessed in the December 2024 Security Incident. Bath Fitter's investigation of the May 2026 Security Incident revealed that 135 additional employees or former employees who reside in the United States and were not impacted by the December 2024 Security Incident may have been impacted by the May 2026 Security Incident. Bath Fitter concluded its full investigation and provided final written notice of the May 2026 Security Incident on or about July 16, 2026. Bath Fitter's investigation confirmed that Plaintiff's PII was potentially accessed in both Security Incidents.

After receiving formal notice of the December 2024 Security Incident from Bath Fitter, Plaintiff, a former employee of Defendant, filed a putative class action Complaint on May 30,

2025, in the United States District Court for the District of Vermont ("Original Complaint"). *Id.* ¶ I.4. In her Original Complaint, Plaintiff asserted claims against Defendant for negligence, breach of implied contract, unjust enrichment, and declaratory judgment. Defendant moved to dismiss Plaintiff's claims and the Court heard oral argument on the motion, after which, on February 6, 2026, the Court entered an order (i) finding Plaintiff had Article III standing, (ii) dismissing Plaintiff's unjust enrichment claim, and (iii) allowing Plaintiff to proceed on her claims for negligence and breach of implied contract. (Doc. 30).

On April 8, 2026, the parties mediated this case. After a full day of hard-fought, arms-length negotiations, and with the assistance of experienced mediator Judge Heather A. Welch (Ret.), the parties reached an agreement. S.A. ¶ I.7. On June 8, 2026, Plaintiff's Counsel was notified that the subset of data potentially accessed during the May 2026 Security Incident included Plaintiff's personal information. *Id.* ¶ I.8.

On July 14, 2026, pursuant to Fed. R. Civ. P. 15(a)(2), Plaintiff filed an amended class action complaint ("First Amended Complaint") alleging negligence and breach of implied contract against Bath Fitter related to both Security Incidents. (Doc. 39).

The parties had previously re-entered negotiations to amend their mediated agreement to reflect the additional allegations raised in the First Amended Complaint. The parties later memorialized the full terms of their settlement in this Settlement Agreement. *Id.* ¶ I.10-11.

Pursuant to its terms, the Settlement Agreement provides for the resolution of all claims and causes of action asserted, or that could have been asserted, against the Bath Fitter Releasees relating to the Security Incidents, by and on behalf of Plaintiff ("Representative Plaintiff") and Settlement Class Members and any other such actions by and on behalf of any other persons in the United States and relating to the Security Incidents.

The relief negotiated by counsel extremely experienced in litigating privacy litigation and security incidents of the type at issue in the present litigation, and provided by the Settlement, is designed to address the injuries and repercussions typically experienced by individuals whose personally identifiable information has been compromised in security incidents of the type at issue here. Specifically, the Settlement Agreement provides for the following general categories of relief: (i) the reimbursement of up to $450 per Settlement Class Member in Ordinary Out-of-Pocket Losses; and (ii) the reimbursement of up to $4,000 per Settlement Class Member in Extraordinary Out-of-Pocket losses as well as, whether or not they have Extraordinary Out-of-Pocket Losses, Settlement Class Members may also submit a claim for up to 8 hours of total time reasonably spent remedying issues related to the Security Incidents at $20.00 per hour by providing to the Claims Administrator an attestation and a brief description of (1) the actions taken in response to the Security Incidents and (2) the time associated with each action ("Attested Time"). S.A. § IV, ¶¶ 2.1-2.2.4.

In lieu of making a claim for Ordinary or Extraordinary Out-Of-Pocket Losses and Attested Time, Settlement Class Members may make one claim for an alternative cash payment. Settlement Class Members making a claim for Ordinary Out-Pocket Losses, Extraordinary Out-Of-Pocket Losses and/or Attested Time are not entitled to a claim for an alternative cash payment. The amount of each alternative cash payment is estimated at $75.00 but will be calculated by dividing $23,593.50 by the number of Approved Claims for the alternative cash payment. S.A. ¶ 2.3.

Finally, Settlement Class Members can elect to enroll in two years of three-bureau credit monitoring services. S.A. ¶ 2.4.

The Settlement Agreement also requires Defendant to separately pay for all costs for notice to the Settlement Class as required under ¶¶ 3.1 and 3.2, Costs of Claims Administration under

¶¶ 8.1, 8.2, and 8.3, and the costs of Dispute Resolution described in ¶ 2.7. S.A. ¶ 2.8.

Defendant will also separately pay the attorney's fees, costs, and expenses of Proposed Class Counsel and a service award to Class Representative (if permitted), as set forth in S.A. § IV, ¶ 7.1, subject to Court approval. Proposed Class Counsel may request, and Defendant has agreed to pay, subject to Court approval, the amount of $150,000.00 to Proposed Class Counsel for attorney's fees, costs, and expenses; and for a service award to Representative Plaintiff of up to $2,500 S.A. ¶¶ 7.2-7.3.

## II. BACKGROUND

### A. Information About the Settlement

To explore and potentially negotiate a class-wide settlement before a neutral, the parties agreed on and retained Judge Heather A. Welch (Ret.), a highly experienced mediator. Declaration of Patrick A. Barthle II and Ryan D. Maxey, Esq., attached as **Exhibit B** ("Counsel Decl."), ¶ 20. The parties briefed their respective positions on the facts, claims, defenses, and assessments of the risk of litigation.

On April 8, 2026, the parties had a full-day mediation session with Judge Welch. *Id.* The negotiations were hard-fought throughout, and the process was conducted at arm's length and non-collusive. *Id* ¶ 21. After extensive arm's length settlement negotiations conducted through Judge Welch, the parties reached an agreement on the essential terms of settlement. *Id.* The subject of attorneys' fees, costs, and expenses, subject to Court approval, was negotiated only after all substantive terms of the Settlement were agreed upon by the parties. *Id.*

On June 8, 2026, Plaintiff's Counsel was notified that the subset of data potentially accessed during the May 2026 Security Incident included Plaintiff's personal information. *Id.* ¶ 20. The parties re-entered negotiations to amend their mediated agreement to reflect the additional allegations concerning the May 2026 Security Incident, as raised in the First Amended Complaint.

*Id.*

Based on Plaintiff's counsel's independent investigation of the relevant facts and applicable law, experience with many other data breach cases, including other data breach cases in this Circuit, and the information provided by Defendant, Plaintiff's counsel submits that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class.

**B. The Terms of the Settlement Agreement**

**1. The Settlement Class**

The proposed Settlement Class sought to be certified for purposes of settlement is defined as follows:

> All U.S. resident individuals who were employed by Bath Fitter or one of its affiliates on or before May 13, 2026, whose PII may have been accessed and/or acquired in the Security Incidents." The Settlement Class specifically excludes: (i) the Bath Fitter Releasees' officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge assigned to evaluate the fairness of this settlement; (iv) the attorneys representing the Parties in the Litigation; and (v) any other individual found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity involved in the Security Incidents or who pleads nolo contendere to any such charge. Defendant represents that the Settlement Class contains approximately 2,277 individuals.

S.A. ¶¶ 1.28.

**2. The Settlement Benefits**

Under the Settlement, Settlement Class Members are eligible to receive the following benefits:

- Reimbursement of Ordinary Out-of-Pocket Losses, not to exceed $450 per Settlement Class Member;

- Reimbursement of Extraordinary Out-of-Pocket Losses, not to exceed $4,000 per Settlement Class Member, including 8 hours of time spent remedying issues related to the Data Incident at $20 per hour; and

- In lieu of making a claim for Ordinary or Extraordinary Out-Of-Pocket Losses

and/or Attested Time, Settlement Class Members may make one claim for an alternative cash payment. The amount of each alternative cash payment is estimated at $75.00 but will be calculated by dividing $23,593.50 by the number of Approved Claims for the alternative cash payment.

- Settlement Class Members can also elect to enroll in two years of three-bureau credit monitoring services.

S.A. § IV, ¶¶ 2.1, 2.2, 2.3, 2.4.

The credit monitoring services provided under the Settlement are robust and important, and will include access to credit reports and credit scores, real-time credit monitoring with Equifax, Experian, or TransUnion, and optional credit freeze ("Credit Monitoring Services"). S.A. ¶ 2.4. The costs for such services will be paid by Defendant after enrollment is completed by the Settlement Class Member. Credit Monitoring Services are available to all Settlement Class Members regardless of whether they submit a claim for Ordinary or Extraordinary Out-of-Pocket Losses, Attested Time, or the Alternative Cash Payment under the settlement. *Id.*

Defendant has and will continue to strengthen its cybersecurity capabilities and data management practices to mitigate threats and maintain continuity, including those practices that were adopted in response to the Security Incidents. Bath Fitter has roadmap initiatives in place and will continue to develop those in order to strengthen its cybersecurity and infrastructure security posture for at least one year from the date of court approval of the settlement (or longer at Bath Fitter's discretion), ("Business Practice Changes"). The actual cost for the implementation and maintenance will be paid by Bath Fitter separate from any settlement payments made to Settlement Class Members. S.A. ¶ 2.6.

**3. Proposed Notice Program**

Pursuant to the Settlement Agreement, the parties propose Epiq Class Action & Claims Solutions, Inc. ("Epiq") be appointed as Claims Administrator. Epiq is a nationally-recognized class action notice and administration firm that has designed a class notice program for this case,

which the parties and Epiq believe is an effective program.

Subject to Court approval, this Notice Program involves direct notice disseminated via mail or email to all Settlement Class Members. S.A. ¶ 3.2.1. The forms of Notice are attached as Exhibits B and C to the Settlement Agreement. A declaration from Cameron R. Azari, Esq. of Epiq with additional details about the Notice Program is attached hereto as **Exhibit C** ("Azari Decl.").

Epiq will also establish a settlement website. S.A. ¶ 3.2. In addition to the Notice, the website will include information about the Settlement, related case documents, and the Settlement Agreement. Notice of the Settlement will be given to the Settlement Class no later than sixty (60) days from the date of the Court's Preliminary Approval Order. *Id.*

The Notice informs Settlement Class Members of the nature of the Action, the litigation background, the terms of the agreement, the relief provided, Proposed Class Counsel's request for fees, costs, and expenses, and the scope of the release and the binding nature of the Settlement on Class Members. The Notice also describes the procedure for objecting to the Settlement; advises Settlement Class Members that they have the right to opt out and describes the consequences of opting out; and will state the date and time of the final approval hearing (subject to this Court's scheduling), advising that the date may change and how to check the settlement website.

**4. Exclusion and Objection Procedures**

The proposed Notice advises Settlement Class Members of their rights to object or opt out of the Settlement and directs Settlement Class Members to the settlement website for more information. S.A. ¶¶ 4.1, 5.1. The Notice provides instructions for Settlement Class Members to exclude themselves from the Settlement Class. S.A. ¶¶ 4.1, 4.2. The Notice also provides instructions for Settlement Class Members to object to the Settlement and/or to Plaintiff's Counsel's application for attorneys' fees, costs, and expenses. S.A. ¶¶ 5.1, 5.2

**5. Attorneys' Fees, Costs, and Expenses**

Proposed Class Counsel has agreed to request, and Defendant has agreed to pay, subject to Court approval, the amount of $150,000.00 for attorneys' fees, costs, and expenses. S.A. ¶ 7.2. Such amount shall be paid separately from the relief available to the Settlement Class. Notably, the parties did not negotiate this agreement or any other issue with respect to attorneys' fees, costs, and expenses until after they had reached an agreement on Class relief. Counsel Decl. ¶ 21.

#### 6. Release of Claims

Under the Settlement, each Settlement Class Member will release:

> any and all claims and causes of action of any kind or nature, including but not limited to those relating to unknown and unsuspected claims ("Unknown Claims"),that were or could have been asserted based on, relating to, concerning or arising, directly or indirectly, out of the Security Incidents, or the allegations, facts, or circumstances related to the Security Incidents as described in the Litigation including, without limitation, negligence; negligence per se; breach of contract; breach of implied contract; breach of fiduciary duty; breach of confidence; publicity given to private life; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; wantonness; failure to provide adequate notice pursuant to any breach notification statute or common law duty; and including, but not limited to, any and all claims for damages of any kind or nature, injunctive relief, disgorgement, declaratory relief, equitable relief, attorney's fees and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, the appointment of a receiver, and any other form of relief that either has been asserted, or could have been asserted, by any Settlement Class Member against any of the Bath Fitter Releasees based on, relating to, concerning or arising out of, directly or indirectly, the Security Incidents or the allegations, facts, or circumstances related to the Security Incidents.

S.A. ¶¶ 1.22, 6.1.

## III. ARGUMENT

### A. Certification of the Settlement Class is Appropriate

Prior to granting preliminary approval of a proposed settlement, the Court should first determine the proposed Settlement Class is appropriate for certification. *See* MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class, proposed class representative, and

proposed class counsel satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P 23(a)(1)–(4); *see Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 512 (2d Cir. 2020). Additionally, where (as here) certification is sought under Rule 23(b)(3), the plaintiff must demonstrate that common questions of law or fact predominate and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615–16. District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *Parker v. Time Warner Entertainment Co.*, 331 F.3d 13, 28 (2d Cir. 2003) (Newman, J., concurring) (collecting cases).

"Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. This case meets all of the Rule 23(a) and (b)(3) prerequisites, and for the reasons set forth below, certification is appropriate.

**1. The Proposed Settlement Class Meets the Requirements of Rule 23(a).**

**a. Numerosity.**

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "[I]n assessing numerosity a court may make common sense assumptions without the need for precise quantification of the class." *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 207 (E.D.N.Y. 2015) (internal quotation marks and citations omitted). Courts require only that plaintiffs provide "show some evidence of or reasonably estimate the number of class members." *Kalkstein v. Collectco, Inc.*, 304 F.R.D. 114, 119 (E.D.N.Y. 2015) (citation omitted).

Here, Defendant represents that the Settlement Class contains approximately 2,277 individuals. S.A. ¶ 1.28. Thus, numerosity is easily satisfied.

**b. Commonality.**

The second prerequisite to certification is commonality, which "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) (citation omitted). "The Commonality Requirement has been characterized as a 'low hurdle.'" *Yi Xiang v. Inovalon Holdings, Inc.*, 327 F.R.D. 510 (S.D.N.Y. 2018) (citation omitted). "[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." *Dukes*, 131 S. Ct. at 2556. Rule 23(a)(2) requires "only that there be at least one issue whose resolution will affect all or a significant number of the putative class members." Here, commonality is readily satisfied.

The Settlement Class Members are joined by the common questions of law and fact that arise from the same events: the Data Security Incidents. Specifically, Plaintiff alleged, among others, the following common questions:

a. Whether and to what extent Defendant had a duty to protect the PII of Plaintiff and Class Members;

b. Whether Defendant had duties not to disclose the PII of Plaintiff and Class Members to unauthorized third parties;

c. Whether Defendant had duties not to use the PII of Plaintiff and Class Members for non-business purposes;

d. Whether Defendant failed to adequately safeguard the PII of Plaintiff and Class Members;

e. When Defendant actually learned of the Security Incidents;

f. Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

g. Whether Defendant violated the law by failing to promptly notify Plaintiff and

Class Members that their PII had been compromised;

h. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Security Incidents;

i. Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Security Incidents to occur;

j. Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiff and Class Members;

k. Whether Plaintiff and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct;

l. Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and

m. Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Security Incidents.

(Doc. 39 at ¶ 86). Such issues, focusing on Defendant's conduct, satisfy commonality.

**c. Typicality.**

The next prerequisite to certification, typicality, is satisfied where "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) (citation omitted). "Typicality does not require that the facts underlying each class member's claims be identical." *Id.* (citation omitted). "It merely demands that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Id.* (citation and internal quotation marks omitted).

Here, typicality is satisfied for the same reasons as commonality. Specifically, Plaintiff's claims are typical of those of other Settlement Class Members because they arise from the Data Security Incidents. They are also based on the same legal theory, *i.e.*, that Defendant had legal

duties to protect Plaintiff's and Settlement Class Members' PII. Because Plaintiff's and Settlement Class Members' claims arise from the same course of events and they make similar legal arguments to prove Defendant's liability, typicality is met. *Hines*, 334 F.3d at 1256.

**d. Adequacy.**

Rule 23(a)(4) requires that the class representative "not possess interests which are antagonistic to the interests of the class." 1 NEWBERG ON CLASS ACTIONS § 3:21. Additionally, the class representative's counsel "must be qualified, experienced, and generally able to conduct the litigation." *Id.*; *Amchem*, 521 U.S. at 625–26. At this stage, there is nothing suggesting this requirement is not satisfied. Plaintiff is a member of the Settlement Class and does not possess any interests antagonistic to the Settlement Class. She authorized Defendant to collect and retain her PII and alleges it was compromised by the Data Security Incidents, as the PII of the Settlement Class was also allegedly compromised. Indeed, Plaintiff's claims coincide identically with the claims of the Settlement Class, and Plaintiff and the Settlement Class desire the same outcome of this litigation. Because of this, Plaintiff has prosecuted this case for the benefit of all Settlement Class Members.

In addition, Proposed Class Counsel are experienced in class action litigation and have submitted their skills and experience in handling class litigation around the country and in this District. Counsel Decl. ¶¶ 3-16. Because Plaintiff and her counsel have devoted substantive time and resources to this litigation, the adequacy requirement is satisfied.

**2. The Predominance and Superiority Requirements of Are Met.**

In addition to meeting Rule 23(a), the proposed Settlement Class must also meet one of the three requirements of Rule 23(b). Here, Plaintiff seeks certification under Rule 23(b)(3), which requires that: (1) questions of law and fact common to members of the class predominate over any

questions affecting only individuals; and (2) the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). "Rule 23(b)(3) does not require that all questions of law or fact be common; it only requires that the common questions predominate over individual questions." *Austen v. Catterton Partners V, LP*, 268 F.R.D. 146 (D. Conn. 2010) (citation omitted). "In determining whether common questions of law and fact predominate, the inquiry is directed primarily toward whether the issue of liability is common to all members of the class." *Id.* (citation omitted). The Settlement Class readily meets these requirements.

**a. Predominance.**

The predominance requirement focuses on whether a defendant's liability is common enough to be resolved on a class basis, *see Dukes*, 131 S. Ct. at 2551–57, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623. "[W]hen determining whether common issues predominate, courts focus on the liability issue ... and if the liability issue is common to the class, common questions [predominate over individual ones]." *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 372–73 (S.D.N.Y. 2007). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (citation omitted).

Common issues readily predominate here because the central liability question in this case—whether Defendant failed to safeguard Plaintiff's PII, like that of every other Settlement

Class Member—can be established through generalized evidence. Several case-dispositive questions could be resolved identically for all members of the Settlement Class, such as whether Defendant had duties to exercise reasonable care in safeguarding, securing, and protecting their PII and whether Defendant breached those duties. The many common questions that arise from Defendant's conduct predominate over individualized issues. Other courts have recognized that common issues arising from a data breach predominate. Because the claims are being certified for settlement purposes, there are no manageability issues.

**b. Superiority.**

Finally, a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the proposed Settlement Class. "The Supreme Court has recognized that absent a class action, small claimants individually may lack the economic resources to vigorously litigate their rights." *Anwar v. Fairfield Greenwich Ltd.*, No. 09-CV-118 VM, 2012 WL 1981505 (S.D.N.Y. June 1, 2012) (citing *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 161 (1974)). Factors the Court may consider are: (1) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class. Fed. R. Civ. P. 23(b)(3). "[M]anageability is, by the far, the most critical concern in determining whether a class action is a superior means of adjudication." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015) (citation omitted).

Here, resolution of numerous claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3).

Indeed, absent class treatment, each Settlement Class Member will be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judiciary and the litigants. Moreover, there is no indication that Settlement Class Members have an interest or incentive to pursue their claims individually, given the amount of damages likely to be recovered, relative to the resources and expense required to prosecute such an action. Additionally, the Settlement will give the parties the benefit of finality.

**B. Plaintiff's Counsel Should Be Appointed as Class Counsel.**

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As discussed above, and as fully explained in the Counsel Declaration, Proposed Class Counsel have extensive experience prosecuting similar class actions, as well as other complex litigation, and have the experience to assess the risk of continued litigation and appeals. Proposed Class Counsel have diligently investigated and prosecuted the claims here, have dedicated substantive resources to the litigation of those claims, and have successfully negotiated the Settlement to the benefit of Plaintiff and the Settlement Class. Accordingly, the Court should appoint Patrick A. Barthle and Ryan D. Maxey as Class Counsel.

**C. The Settlement Is Fair, Reasonable, and Adequate.**

After determining that certification is appropriate, courts next consider whether the proposed settlement warrants preliminary approval. Under Rule 23(e), the Court should approve a class action settlement if it is fair, reasonable, and adequate.

Further, it must be noted that there is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation. Thus, while district courts have discretion in deciding whether to approve a proposed settlement, "[t]he court must give proper deference to the private consensual decision of the parties in exercising its discretion." *Acevedo v. Workfit Med. LLC*, 187 F. Supp. 3d 370 (W.D.N.Y. 2016).

**1. The Settlement Satisfies Amended Rule 23(e)**

Rule 23(e)(1) now provides that notice should be given to the class, and hence, preliminary approval should be granted, where the Court "will likely be able to" (i) finally approve the settlement under Amended Rule 23(e)(2), and (ii) certify the class for settlement purposes. Fed. R. Civ. P. 23(e)(1)(B)(i)–(ii); *see also id.* 2018 Amendment Advisory Committee Notes. As explained above, the Class here meets the criteria for certification of a settlement class, including all aspects of numerosity, commonality, typicality, adequacy, and predominance. Rule 23(e)(1)(B)(ii) is therefore met.

As to Rule 23(e)(1)(B)(i), final approval is proper under the amended rule upon a finding that the settlement is "fair, reasonable, and adequate" after considering:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of

payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e). Here, the Court will "likely be able to" finally approve this Settlement and thus preliminary approval should be granted.

**a. Adequacy of Representation and Arm's Length Negotiation**

As explained above, Plaintiff and Class Counsel have adequately represented the Class. *See supra* § III.A.1.d. Moreover, the Settlement was negotiated at arm's length using experienced mediator Judge Welch. Counsel Decl. ¶ 21. Subsections (A) and (B) of Rule 23(e)(2) are therefore met.

**b. Adequacy of Relief**

The relief offered by the Settlement is adequate considering the risks of continued litigation. Although Plaintiff is confident in the merits of her claims, the risks involved in prosecuting a class action through trial cannot be disregarded. Plaintiff's claims would still need to succeed on a motion for class certification, and likely survive an appeal thereof.

Pursuant to the Settlement, Settlement Class Members will be able to file claims for: (i) the reimbursement of up to $450 per Settlement Class Member in Ordinary Out-of-Pocket Losses; (ii) the reimbursement of up to $4,000 per Settlement Class Member in Extraordinary Out-of-Pocket losses as well as up to 8 hours of total time reasonably spent remedying issues related to the Security Incidents at $20.00 per hour; (iii) in the alternative to out-of-pocket claims, make a claim for an alternative cash payment estimated at $75.00; and (iv) elect to enroll in two years of three-bureau credit monitoring services. The Settlement Agreement also requires Defendant to separately pay for all costs for notice to the Settlement Class, Costs of Claims Administration, and the costs of Dispute Resolution; as well as to separately pay the attorney's fees, costs, and expenses

of Proposed Class Counsel (up to $150,000.00) and a service award to the Class Representative (of up to $2,500), subject to Court approval.

Here, the central legal issues affecting the Settlement Class are attacks on the substantive claims Plaintiff has alleged. Nevertheless, and despite the strength of the Settlement, Plaintiff is pragmatic in her awareness of the various defenses available to Defendant, as well as the risks inherent to continued litigation. Defendant has consistently denied the allegations and made clear that it would vigorously defend this case through trial as needed.

Settlement relief will be distributed via a straight-forward claims process utilizing an easy-to-understand claim form, including a tear-off form for claims that do not require documentation—e.g., Claims for an Alternative Cash Payment, Credit Monitoring Services, and/or Attested Time. Checks for approved claims shall be mailed and postmarked within sixty (60) days of the Effective Date, or within thirty (30) days of the date that the claim is approved, whichever is later. S.A. ¶ 8.2.

Attorneys' fees, costs, and expenses were negotiated separate, apart, and after reaching agreement on Class relief. Counsel Decl. ¶ 21. Proposed Class Counsel will request the amount of $150,000.00 for attorneys' fees, costs, and expenses, S.A. ¶ 7.2, and move the Court for a service award payment not to exceed $2,500.00 for the Class Representative. S.A. ¶ 7.3. Defendant shall pay the Court-approved amount of attorney's fees and litigation costs to Proposed Class Counsel and the Court-approved service award to Representative Plaintiff within thirty (30) days after the Effective Date. S.A. ¶ 7.4.

Accordingly, the relief provided by the Settlement is fair, reasonable, and adequate especially when considering the inherent costs, risks, and delay were this matter to proceed. Subsection (C) of Rule 23(e)(2) is therefore met.

**c. The Settlement Treats Class Members Equitably**

The last requirement of the new Rule 23(e) is that the Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats Class Members equitably because all Settlement Class Members are eligible for reimbursement following submission of a valid and approved claim; may, in the alternative, make a claim for the Alternaive Cash Payment; and are eligible to enroll in two years of Credit Monitoring Services. Counsel Decl. ¶ 23.

### 2. The Settlement Satisfies Historic Preliminary Approval Factors

The historical procedure for reviewing a proposed class action settlement is a well-established two-step process. ALBA & CONTE, 4 NEWBERG ON CLASS ACTIONS, §11.25, at 38–39 (4th ed. 2002). "[P]reliminary approval should be granted where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Dover v. Brit. Airways, PLC (UK)*, 323 F. Supp. 3d 338 (E.D.N.Y. 2018) (citation omitted).

Here, there is no question that the proposed Settlement is "within the range of possible approval." As explained above, the process used to reach the Settlement was exceedingly fair and overseen by an experienced neutral. The Settlement is the result of intensive, arm's length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues in this case. Further, the relief provided is significant, especially considering the risks and delay further litigation would entail. Thus, the Settlement is due to be preliminarily approved.

## D. The Proposed Class Notice Satisfies Rule 23.

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise

regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL FOR COMPL. LITIG. § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "The notice must contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *Zink v. First Niagara Bank, N.A.*, 155 F. Supp. 3d 297 (W.D.N.Y. 2016) (citations omitted).

The Notice program here satisfies all these criteria and is designed to provide the best notice practicable. The Notice is reasonably calculated to apprise the Settlement Class of the pendency of the case, class certification (for settlement purposes), the terms of the Settlement, Proposed Class Counsel's request for attorney's fees, costs, and expenses, Settlement Class Members' rights to opt-out of or object to the Settlement, as well as the other information required by Fed. R. Civ. P. 23(c)(2)(B). The Notice program is comprised of: (1) direct Notice sent by mail or email; and (2) Notice posted to the settlement website. S.A. ¶¶ 1.16, 3.1(f), 3.2. This approach will satisfy due process.

The form of the Preliminarily Approval Order, Exhibit D, has been drafted and approved by counsel for Plaintiff and counsel for Defendant. The proposed claim form, S.A. Exhibit A, likewise satisfies all of the above criteria. Finally, Defendant shall serve or cause to be served a notice of the proposed Settlement on appropriate state officials in accordance with the requirements under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b). S.A. ¶ 9.

Therefore, the Notice and Notice Program satisfy all applicable requirements of the law, including Rule 23 and Due Process. The Court should therefore approve the Notice, Notice Program, and the form and content of the claim form and Notice.

**E. The Court Should Schedule a Final Approval Hearing.**

The last step in the preliminary approval process is to schedule a Final Approval Hearing, at which the Court will hear evidence and argument necessary to make its final evaluation of the Settlement; whether to enter a Final Approval Order under Rule 23(e); and whether to approve Proposed Class Counsel's request for the Fee Award and Costs. Plaintiff requests that the Court schedule the Final Approval Hearing at a date convenient for the Court, no earlier than 100 days after Defendant notifies the appropriate government officials pursuant to CAFA. Class Counsel will file the motion for Final Approval no later than 14 days prior to the hearing.

**IV. CONCLUSION**

For the reasons stated, Plaintiff respectfully requests that the Court enter an order: (1) preliminarily approving the proposed settlement; (2) preliminarily certifying the Settlement Class; (3) appointing Margaret Malaterre as Settlement Class representative; (4) appointing Patrick A. Barthle and Ryan D. Maxey as Class Counsel; (5) approving the proposed Notice Program and authorizing its dissemination; (6) appointing Epiq Class Action & Claims Solutions, Inc. as the Claims Administrator; (7) approving the procedures for exclusions and objection; and (8) setting a schedule for the final approval process.

Dated: July 31, 2026

Respectfully submitted,

/s/ *Ryan D. Maxey*

Patrick A. Barthle*
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**

Florida Bar No. 99286
pbarthle@ForThePeople.com
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 229-4023
Facsimile: (813) 222-4708

Ryan D. Maxey*
**MAXEY LAW FIRM, P.A.**
107 N. 11th St. #402
Tampa, Florida 33602
Telephone: (813) 448-1125
Email: ryan@maxeyfirm.com

*admitted *pro hac vice*

***Attorneys for Plaintiff and the Proposed Class***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 31, 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *Ryan D. Maxey*